## CIRCUIT COURT OF SHENANDOAH COUNTY

Gina C. Ritchie

v.

Randall L. Loker, et al.

October 13, 2004

Case No. (Chancery) CH04-4

BY JUDGE DENNIS L. HUPP

This is a partition suit between joint tenants. Although the parties resided together in a romantic relationship and share a child together, they were not married to each other, and the Court is therefore not put to the task of making equitable distribution of the real estate jointly owned. The subject real estate is a tract of 3.064 acres, more or less, located in Lee Magisterial District, Shenandoah County, Virginia. It is improved by a dwelling house and outbuildings. It was acquired by the parties in November 1998. It has an appraised value of $275,000.00. There are two deeds of trust against the real estate: deed of trust dated August 14, 2001, and of record on Deed Book 938, Page 914, in the Clerk's Office of this Court, securing a note in the amount of $125,000.00 payable to First Virginia Bank-Blue Ridge (now BB&T); and deed of trust dated April 26, 2002, and of record in Deed Book 981, Page 847, of the Clerk's Office of this Court, securing a credit line in the maximum amount of $28,000.00, from Sun Trust Bank. The property has a rental value of $750.00 per month according to the testimony of the appraiser, William Wender.

The parties separated in July 2002. Ritchie left the residence, and Loker has been in exclusive possession of same since that time. Each party is claiming reimbursement for certain sums expended in regards to the purchase, upkeep, maintenance, repair, and improvement of the real estate, and for payment of mortgage indebtedness in respect thereto. Ritchie seeks rent for the time Loker has had exclusive possession of the premises, and she also asks the Court to "do equity" when dividing the net proceeds of sale by recognizing her role as a full-time homemaker and mother to the parties' child.

Both parties agree that the property is not divisible in kind. Ritchie does not want to purchase Loker's interest, but Loker does want to purchase Ritchie's interest depending on the "bottom line." Ritchie is willing to sell her interest to Loker at the appraised value but wants to sell the property in another expeditious manner if he does not go through with the purchase within a reasonable time.

I will order that Loker be given the opportunity to purchase Ritchie's undivided one-half interest at the price of $270,000.00. This is the total appraised value less the value of the pole barn (per the appraisal) erected after Ritchie vacated the premises. Loker will be required to assume the balance of the credit line deed of trust without contribution from Ritchie. This credit line financed the construction of the pole barn.

Neither party will be given credit for his or her original contribution to the down payment for the purchase of the real estate. Each one made this contribution knowing at the time that they would take title jointly thus acquiring equal interests in the property. Hence, Loker's claim for one-half of his down payment of $8,594.98 is disallowed, as is Ritchie's claim for one-half of her down payment of $3,500.00.

Loker also contributed the sum of $19,500.00 toward payment of the first deed of trust on the property when he sold separately owned real estate in Rockingham County. He paid nineteen installments under that deed of trust in the amount of $1,081.34 each for a total of $20,545.46. He has paid thirty-seven installments of $1,129.84 each under the current First Virginia (BB&T) deed of trust for a total of $41,804.08. He paid all the real estate taxes accruing since the parties bought this property, and these have totaled $4,894.21. He also kept the property insured by paying total premiums of $3,022.80. The aggregate of these is $89,766.55, and Loker is entitled to contribution from his co-tenant in the amount of one-half of this sum, that is $44,883.00 (rounded off).

Ritchie made the deed of trust payments initially, and she paid fifteen installments in the amount of $1,081.34 each, totaling $16,220.10. She is entitled to one-half of this amount from Loker, specifically $8,110.05. She is also entitled to rent from Loker for the time he has had sole possession of the real estate. I will award her rent equal to one-half of the monthly rental value of the premises that being $375.00 (½ of $750.00). Loker has had sole possession for twenty-six months. This totals $9,750.00. The aggregate of these figures is $17,860.00 (rounded off). This figure will be offset against the sums due from her to Loker.

While Loker claims to have expended money to maintain and repair the home, Ritchie was actively involved in the maintenance and upkeep as well. I

make no allowance to Loker for the sums claimed in this regard. I am not satisfied that Loker has proved contribution toward the deed of trust payments during the time Ritchie was routinely paying these, November 1998 through January 2000. I reject this claim.

While I have recognized the household contributions made by Ritchie as a full-time homemaker to the extent indicated in the preceding paragraph, I cannot go further. The parties chose to live together without the benefit of marriage. The factors normally considered in making equitable distribution, as mandated by statute, do not apply here. I know of no case law where normal household chores or childcare has been rewarded when partitioning real estate. Even a court of equity is bound by precedent. I cannot accord this relationship the dignity of marriage, even though the refusal to do so works to the disadvantage of one of them and to the advantage of the other. For our purposes here, the rights and obligations of these parties in respect to one another arise from their relationship as co-tenants and from none other.

Loker will be allowed to purchase Ritchie's interest in the real estate at the price stated herein. He must close within 120 days. He will assume the credit line deed of trust without credit for this from Ritchie. The first deed of trust will be discharged from the sale proceeds or assumed as part of the purchase price. The current semi-annual taxes will be prorated as of date of closing. Each party will bear the normal closing costs, with Ritchie paying those normally paid by seller and Loker those normally paid by buyer. The net proceeds of sale will be divided equally between the parties, and, then, Ritchie will reimburse Loker for the items addressed herein less the offset, specifically the amount of $27,023.00. This amount may be adjusted as of the date of closing to factor in deed of trust payments made in the interim as well as rent accruing during that time. Our hearing was held on September 23, 2004, and the calculations made herein run through that month.